## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| Plaintiff, | ) | **Case No**. 16-10018-01-JTM |
| v. | ) | |
| **STEVEN R. HENSON, M.D.**, | ) | **Violations**: |
| **KIMI HARPER**, | ) | 21 U.S.C. § 846 |
| **AMANDA TERWILLEGER**, | ) | 21 U.S.C. § 841 |
| **JEREMY WOJACK**, | ) | 21 U.S.C. § 853 |
| **JORDAN ALLISON**, | ) | 18 U.S.C. § 924(c) |
| **GRANT LUBBERS**, | ) | 18 U.S.C. § 1001(a)(3) |
| **JOEL TORRES**, **JR**. | ) | 18 U.S.C. § 1509 |
| **DAVID MONTANO**, | ) | 18 U.S.C. § 1956(a)(1)(A)(i) |
| **KEITH ATTEBERY**, | ) | 18 U.S.C. § 1957 |
| | ) | 18 U.S.C. § 2 |
| Defendants. | ) | |

## INDICTMENT

THE FEDERAL GRAND JURY CHARGES:

At times relevant to this Indictment:

1.      The United States Drug Enforcement Administration (DEA) was the agency of the United States charged with the responsibility of enforcing the controlled substances laws and regulations of the United States.

2.      DEA was also responsible for, among other things, regulating the pharmaceutical industry, medical professionals, researchers, pharmacies, manufacturers, and distributors in complying with the Controlled Substances Act (CSA), codified at Title 21, United States Code, Section 801 et seq.   The CSA governed the manufacture, distribution, and dispensing of controlled substances in the United States.

3.      The CSA was the federal law that placed all controlled substances into one of five categories, or schedules, according to the drug's potential for abuse, physical and psychological

1

dependence liability, and current accepted medical use.   Various prescription drugs were scheduled substances under the CSA.   There were five schedules of controlled substances - schedules I, II, III, IV, and V.   Controlled substances in schedule I currently have no accepted medical use in treatment in the United States, and there is a lack of accepted safety for use of these substances under medical supervision.   Abuse of schedule II controlled substances, which have a currently accepted medical use with severe restrictions, may lead to severe physical or psychological dependence relative to the drugs or substances or other substances in schedule I. Abuse of schedule III and IV controlled substances may lead to more limited physical dependence or psychological dependence relative to the drugs or other substances in Schedules II or III.

4.      Title 21, Code of Federal Regulations, Section 1306.04(a) provided:

> A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice.   The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription.   An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. 829) and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances.

5.      Oxycodone, a narcotic (opiate) analgesic, was classified under federal narcotics laws as a schedule II controlled substance. 21 C.F.R. §1308.12(b)(1)(xiii). OxyContin and other brand names, a prescription drug used to treat moderate to severe pain, contained oxycodone and was therefore classified as a schedule II controlled substance.

2

Methadone, a pharmaceutical synthetic opioid, was classified under federal narcotics laws as a schedule II controlled substance.   21 C.F.R. § 1308.12(c)(15).   Dolophine and other brand names, a prescription drug historically and currently used to treat opioid addiction, and more recently used to treat moderate to severe pain, contained methadone and was therefore classified as a schedule II controlled substance.

Alprazolam, a benzodiazepine (depressant) that produced central nervous system depression was classified as a schedule IV controlled substance.   21 CFR §1308.14(c)(2). Xanax and other brand names, a prescription drug used to treat insomnia and anxiety, contained alprazolam and was therefore classified as a schedule IV controlled substance.

6.     The Kansas Board of Healing Arts regulated the practice of medicine in the State of Kansas (K.S.A. 65-2801), which required any physician (practitioner) practicing medicine in the state to be licensed (K.S.A. 65-2803).   The Board further required that a licensed practitioner maintain patient records for a period of ten years and that each physician notify the Board where medical records are stored if he closes his medical practice (K.A.R. 100-24-1 through 3.).

7.     K.S.A. 65-2836 states that a "licensee's license may be revoked, suspended or limited…upon a finding…the licensee has committed an act of unprofessional or dishonorable conduct or professional incompetency."   K.S.A. 65-2837 defines "unprofessional conduct" as "prescribing, dispensing administering or distributing a prescription drug or substance, including a controlled substance, in an improper or inappropriate manner, or for other than a valid medical purpose, or not in the course of the licensee's professional practice."   On October 17, 1998, the Board adopted and published, "Guidelines for the Use of Controlled Substances for the Treatment

of Pain," which communicated what the Board considered to be within the boundaries of

professional practice:

1. Evaluation of the Patient

- The medical record should document the nature and intensity of the pain, current and past treatments for pain, underlying or coexisting diseases or conditions, the effect of the pain on physical and psychological function and history of substance abuse.   The medical record also should document the presence of one or more recognized medical indications for the use of a controlled substance.

2. Treatment Plan

- The written treatment plan should state objectives that will be used to determine treatment success, such as pain relief and improved physical and psychosocial function, and should indicate if any further diagnostic evaluations or other treatments are planned.   After treatment begins, the health care provider should adjust drug therapy to the individual needs of each patient.   Other treatment modalities or a rehabilitation program may be necessary depending on the etiology of the pain and the extent to which the pain is associated with physical and psychosocial impairment.

3. Informed Consent and Agreement for Treatment

- The provider should discuss the risks and benefits of the use of controlled substances with the patient or the patient's guardian.   The patient should receive prescriptions from one provider and one pharmacy where possible.   If the patient is determined to be at high risk for medication abuse or have a history of substance abuse, the provider may employ the use of a written pain management agreement between the provider and the patient outlining patient responsibilities, including drug screening, number and frequency of prescription refills and reasons for discontinuing drug therapy.

4. Periodic Review

- At reasonable intervals the provider should review the course of treatment and any new information about the etiology of the pain.   Continuation or modification of therapy should depend on the provider's evaluation of progress toward stated treatment objectives. If treatment goals are not being met the provider should re-evaluate the appropriateness of continued treatment.   The provider should monitor compliance in medication usage and related treatment plans.

4

5. Consultation

- The provider should refer the patient as necessary for additional evaluation and treatment in order to achieve treatment objectives.   Special attention should be given to those pain patients who are at risk for misusing the medications and those whose living arrangements pose a risk for medication misuse or diversion.   The management of pain in patients with a history of substance abuse or with a co-morbid psychiatric disorder may require extra care, monitoring, documentation and consultation with, or referral to, an expert in the management of such patients.

6. Medical Records

- The physician should comply with the requirements of K.A.R. 100-24-1, in the maintenance of an adequate record for each patient.

7. Compliance with Controlled Substances Laws and Regulations

- To prescribe, dispense or administer controlled substances, the physician must be licensed in the state and comply with applicable federal and state regulations.

8.      A doctor diverts prescription controlled substances into the illegal drug market when the doctor issues or the pharmacist dispenses prescriptions for these medications outside the usual course of professional medical practice and without a legitimate medical purpose. A doctor or pharmacist who engages in such diversion is subject to prosecution under the federal narcotics laws. Title 21 of the Code of Federal Regulations, Section 1306.04, provides that doctors and pharmacists bear responsibility for the proper prescribing and dispensing of controlled substances, and are subject to the penalties for violations of the Controlled Substances Act (CSA).

9.      Title 21 of the Code of Federal Regulations §1306.05, §1306.11 and §1306.21 required a prescription for a controlled substance be dated as of, and signed on, the day issued, bearing the patient's full name and address, the drug name, strength, dosage form, quantity

prescribed, directions for use and the name, address, and registration number of the doctor or practitioner.

10.     At all times relevant to this Indictment, **STEVEN R. HENSON, M.D.** was a doctor, registered as a "practitioner" with the DEA. **STEVEN R. HENSON, M.D.** obtained his Kansas medical license, #4-23263 on July 1, 1990.   **STEVEN R. HENSON, M.D.** initially became registered with DEA under DEA Registration Number BH1912270 on July 21, 1989. His registered address under that number changed throughout the years; however, as of November 30, 2012, his registered address was located at 2544 North Maize Court, Suite 100, Wichita Health & Wellness, Wichita, Kansas 67205.   On August 12, 2014, his registered address changed to 3636 North Ridge Road, Suite 2, Kansas Men's Clinic in Wichita, Kansas 67205.   **STEVEN R. HENSON, M.D.** also maintained a second DEA Registration FH2935697 which was issued November 15, 2011, located at 162 North Hillside Street, Wichita, Kansas 67214.   That registration was retired on December 1, 2014, for failure to renew.

At all times relevant to this Indictment, **STEVEN R. HENSON, M.D.**, while a registered practitioner and doctor, distributed and dispensed prescriptions for Oxycodone, Alprazolam, and Methadone, all controlled substances, outside the usual course of professional medical practice and without a legitimate medical purpose, to wit: by failing to maintain required patient medical records and by writing prescriptions:

    a.      in return for a cash payment;

    b.      which were post-dated;

    c.      without a medical necessity;

    d.      without a legitimate medical examination, and

    e.      for individuals other than the person who came to see him.

6

11.     **STEVEN R. HENSON, M.D.** maintained bank accounts at Bank of America and Relianz Bank (now Union State Bank) operating in the United States, and within the District of Kansas. Bank of America and Relianz Bank were insured by the Federal Deposit Insurance Corporation at all times relevant to this indictment.    Relianz Bank account xxx8397 and Bank of America accounts xxxxxxxx2743, xxxxxxxx2736, xxxxxx9649, xxxxxxx6820 and xxxxxxxx2178 all were used by **HENSON** as accounts where cash was deposited during the alleged conspiracy.    **HENSON** deposited at least $312,402.50 in cash proceeds during the period of the alleged conspiracy.

## COUNT 1

12.     From at least on or about July 1, 2014 to on or about August 7, 2015, within the District of Kansas, and elsewhere, the defendants,

**STEVEN R. HENSON, M.D.,**
**KIMI HARPER,**
**AMANDA TERWILLEGER,**
**JEREMY WOJACK,**
**JORDAN ALLISON,**

did knowingly and intentionally conspire and agreed together with each other, and with others known and unknown to the grand jury, to distribute, dispense and possess with the intent to distribute prescription drugs, to wit: Oxycodone, a controlled substance, outside the usual course of professional medical practice and without a legitimate medical purpose in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C).

In violation of Title 21, United States Code, Section 846.

<u>QUANTITY OF OXYCODONE INVOLVED IN THE CONSPIRACY</u>

Although no mandatory minimum amounts are triggered in Count 1, with respect to defendant **STEVEN R. HENSON, M.D.** his/her conduct as a member of the conspiracy charged in Count One, which includes the reasonably foreseeable conduct of other members of the conspiracy charged in Count One, involved at least 22,936 oxycodone 30 mg tablets, a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C).

With respect to defendant **KIMI HARPER** his/her conduct as a member of the conspiracy charged in Count One, which includes the reasonably foreseeable conduct of other members of the conspiracy charged in Count One, involved at least 8,497 oxycodone 30 mg tablets, a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C).

With respect to defendant **AMANDA TERWILLEGER** his/her conduct as a member of the conspiracy charged in Count One, which includes the reasonably foreseeable conduct of other members of the conspiracy charged in Count One, involved at least 4,410 oxycodone 30 mg tablets, a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C).

With respect to defendant **JEREMY WOJACK** his/her conduct as a member of the conspiracy charged in Count One, which includes the reasonably foreseeable conduct of other members of the conspiracy charged in Count One, involved at least 7,629 oxycodone 30 mg tablets, a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C).

With respect to defendant **JORDAN ALLISON** his/her conduct as a member of the conspiracy charged in Count One, which includes the reasonably foreseeable conduct of other

members of the conspiracy charged in Count One, involved at least 2,400 oxycodone 30 mg

tablets, a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and

(b)(1)(C).

## COUNT 2

13.    From on or about July 1, 2014 through August 7, 2015, within the District of

Kansas, and elsewhere, the defendants,

**STEVEN R. HENSON, M.D.**
**GRANT LUBBERS,**
**JOEL TORRES,JR.,**
**DAVID MONTANO,**
**KEITH ATTEBERY,**

did knowingly and intentionally conspire and agreed together with each other, and with

unindicted coconspirator N.M., and with others known and unknown to the grand jury, to

distribute, dispense, and possess with the intent to distribute prescription drugs, to wit:

Oxycodone, Alprazolam, and Methadone, controlled substances, outside the usual course of

professional medical practice and without a legitimate medical purpose in violation of Title 21,

United States Code, Section 841(a)(1) and (b)(1)(C).

In violation of Title 21, United States Code, Section 846.

QUANTITY OF DRUGS INVOLVED IN THE CONSPIRACY

Although no mandatory minimum amounts are triggered in Count 2, with respect to

defendant **STEVEN R. HENSON, M.D.** his/her conduct as a member of the conspiracy charged

in Count Two, which includes the reasonably foreseeable conduct of other members of the

conspiracy charged in Count Two, involved at least 6,500 oxycodone 30 mg tablets; 1,740

alprazolam tablets; and 2,640 methadone tablets, all controlled substances, in violation of Title

21, United States Code, Section 841(a)(1) and (b)(1)(C).

With respect to defendant **GRANT LUBBERS** his/her conduct as a member of the conspiracy charged in Count Two, which includes the reasonably foreseeable conduct of other members of the conspiracy charged in Count Two, involved at least 2,640 oxycodone 30 mg tablets and 1,140 alprazolam tablet, all controlled substances, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C).

With respect to defendant **JOEL TORRES, JR.** his/her conduct as a member of the conspiracy charged in Count Two, which includes the reasonably foreseeable conduct of other members of the conspiracy charged in Count Two, involved at least1,020 oxycodone 30 mg tablets; 480 alprazolam tablets; and 240 methadone tablets, all controlled substances, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C).

With respect to defendant **DAVID MONTANO** his/her conduct as a member of the conspiracy charged in Count Two, which includes the reasonably foreseeable conduct of other members of the conspiracy charged in Count Two, involved at least 2,160 oxycodone 30 mg tablets and 1,920 methadone tablets, all controlled substances,, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C).

With respect to defendant **KEITH ATTEBERY** his/her conduct as a member of the conspiracy charged in Count Two, which includes the reasonably foreseeable conduct of other members of the conspiracy charged in Count Two, involved at least 480 oxycodone 30 mg tablets; 120 alprazolam tablets; and 480 methadone tablets, all controlled substances,, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C).

## COUNT 3

14.     On or about December 11, 2014, within the District of Kansas, the defendants,

**STEVEN R. HENSON, M.D.,
JEREMY WOJAK,
AMANDA TERWILLEGER,**

did knowingly and intentionally distribute, dispense, and possess with the intent to distribute prescription drugs, to wit: 8 oxycodone 30 mg tablets of oxycodone, a schedule II controlled substance, outside the usual course of professional medical practice and without a legitimate medical purpose.

In violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C) and Title 18, United States Code, Section 2.

## COUNT 4

15.     On or about February 26, 2015, within the District of Kansas, the defendants,

**STEVEN R. HENSON, M.D.,
GRANT LUBBERS,
JOEL TORRES, JR.,**

and unindicted coconspirator N.M., did knowingly and intentionally distribute, dispense, and possess with the intent to distribute prescription drugs, to wit: 16 oxycodone 30mg tablets, a schedule II controlled substance, outside the usual course of professional medical practice and without a legitimate medical purpose.

In violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C) and Title 18, United States Code, Section 2.

11

## COUNT 5

16.     On or about March 3, 2015, within the District of Kansas, the defendants,

**STEVEN R. HENSON, M.D.,**
**JOEL TORRES, JR.,**

and unindicted coconspirator N.M., did knowingly and intentionally distribute, dispense, and

possess with the intent to distribute prescription drugs, to wit: 13 oxycodone 30mg tablets, a

schedule II controlled substance, outside the usual course of professional medical practice and

without a legitimate medical purpose.

In violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C) and Title 18,

United States Code, Section 2.

## COUNT 6

17.     On or about March 13, 2015, within the District of Kansas, the defendants,

**STEVEN R. HENSON, M.D.,**

and unindicted coconspirator N.M., did knowingly and intentionally distribute, dispense, and

possess with the intent to distribute prescription drugs, to wit: 15 oxycodone 30mg tablets, a

schedule II controlled substance, outside the usual course of professional medical practice and

without a legitimate medical purpose.

In violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C) and Title 18,

United States Code, Section 2.

## COUNT 7

18.     On or about March 26, 2015, in the District of Kansas, the defendants,

**STEVEN R. HENSON, M.D.,**
**JEREMY WOJAK,**
**AMANDA TERWILLEGER,**
**JORDAN ALLISON,**

did knowingly and intentionally distribute, dispense, and possess with the intent to distribute prescription drugs, to wit: 25 oxycodone 30 mg tablets of oxycodone, a schedule II controlled substance, outside the usual course of professional medical practice and without a legitimate medical purpose.

In violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C) and Title 18, United States Code, Section 2.

## COUNT 8

19.     On or about April 3, 2015, within the District of Kansas, the defendants,

**STEVEN R. HENSON, M.D.,
KEITH ATTEBERY,**

and unindicted coconspirator N.M., did knowingly and intentionally distribute, dispense, and possess with the intent to distribute prescription drugs, to wit: 360 oxycodone 20mg tablets, a schedule II controlled substance, outside the usual course of professional medical practice and without a legitimate medical purpose.

In violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C) and Title 18, United States Code, Section 2.

## COUNT 9

20.     On or about April 8, 2015, in the District of Kansas, the defendants,

**STEVEN R. HENSON, M.D.,
JEREMY WOJAK,
AMANDA TERWILLEGER,**

did knowingly and intentionally distribute, dispense, and possess with the intent to distribute prescription drugs, to wit: 18 oxycodone 30 mg tablets, a schedule II controlled substance,

13

outside the usual course of professional medical practice and without a legitimate medical purpose.

In violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C) and Title 18, United States Code, Section 2.

## COUNT 10

21.     On or about April 27, 2015, within the District of Kansas, the defendant,

**STEVEN R. HENSON, M.D.,**

did knowingly and intentionally distribute and dispense prescription drugs to a Confidential Source, to wit: 420 oxycodone 30mg tablets, a schedule II controlled substance, outside the usual course of professional medical practice and without a legitimate medical purpose.

In violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C) and Title 18, United States Code, Section 2.

## COUNT 11

22.     On or about May 4, 2015, within the District of Kansas, the defendant,

**STEVEN R. HENSON, M.D.,**

did knowingly and intentionally distribute and dispense prescription drugs to an undercover agent of the DEA, to wit: 240 oxycodone 30mg tablets, a schedule II controlled substance, outside the usual course of professional medical practice and without a legitimate medical purpose.

In violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C) and Title 18, United States Code, Section 2.

## COUNT 12

23.     On or about May 7, 2015, within the District of Kansas, the defendants,

**STEVEN R. HENSON, M.D.,**
**KEITH ATTEBERY,**
**GRANT LUBBERS,**

and unindicted coconspirator N.M., did knowingly and intentionally distribute, dispense, and

possess with the intent to distribute prescription drugs, to wit: 480 oxycodone 30mg tablets, a

schedule II controlled substance, outside the usual course of professional medical practice and

without a legitimate medical purpose.

In violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C) and Title 18,

United States Code, Section 2.

## COUNT 13

24.     On or about May 27, 2015, within the District of Kansas, the defendant,

**STEVEN R. HENSON, M.D.,**

did knowingly and intentionally distribute and dispense prescription drugs to an undercover

agent with the DEA, to wit: 240 oxycodone 30mg tablets, a schedule II controlled substance,

outside the usual course of professional medical practice and without a legitimate medical

purpose.

In violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C) and Title 18,

United States Code, Section 2.

## COUNT 14

25.     On or about May 27, 2015, within the District of Kansas, the defendant,

**STEVEN R. HENSON, M.D.,**

did knowingly and intentionally distribute and dispense prescription drugs to a Confidential

Source to wit: 420 oxycodone 30mg tablets, a schedule II controlled substance, outside the usual

course of professional medical practice and without a legitimate medical purpose.

In violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C) and Title 18,

United States Code, Section 2.

## COUNT 15

26.     On or about May 29, 2015, within the District of Kansas, the defendants,

**STEVEN R. HENSON, M.D.,**
**DAVID MONTANO,**

did knowingly and intentionally distribute, dispense, and possess with the intent to distribute

prescription drugs, to wit: 10 oxycodone 30mg tablets, a schedule II controlled substance,

outside the usual course of professional medical practice and without a legitimate medical

purpose.

In violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C) and Title 18,

United States Code, Section 2.

## COUNT 16

27.     Beginning from on or about July 1, 2014, through July 24, 2015, within the

District of Kansas, the defendant,

**STEVEN R. HENSON, M.D.,**

16

did knowingly and intentionally distribute and dispense prescription drugs to N.M., to wit: 2,480 oxycodone 30mg tablets, a schedule II controlled substance, 2,520 methadone 10 mg tablets, a scheduled II controlled substance, 720 alprazolam 2 mg tablets, a scheduled IV controlled substance, outside the usual course of professional medical practice and without a legitimate medical purpose.

In violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C) and Title 18, United States Code, Section 2.

## COUNT 17

28.     Beginning from on or about May 4, 2015 through July 24, 2015, within the District of Kansas, the defendant,

**STEVEN R. HENSON, M.D.,**

did knowingly and intentionally distributed and dispensed prescription drugs, to wit: Methadone, a schedule II controlled substance, and Alprazolam, a schedule IV controlled substance, outside the usual course of professional medical practice and without a legitimate medical purpose, the use of which resulted in the death of N.M. on July 24, 2015.

In violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C) and Title 18, United States Code, Section 2.

## COUNT 18

29.     On or about July 1, 2014 through August 7, 2015, in the District of Kansas, the defendant,

**STEVEN R. HENSON, M.D.,**

did unlawfully, knowingly, and intentionally possess a firearm in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, to wit: the dispensing and

17

distribution of Oxycodone, Alprazolam, and Methadone, controlled substances, outside the usual course of professional medical practice and without a legitimate medical purpose in violation of Title 21, United States Code, Section 841(a)(1).

In violation of Title 18, United States Code, Section 924(c)(1)(A).

### COUNT 19

30.     On or about September 26, 2015, in the District of Kansas, the defendant,

**STEVEN R. HENSON, M.D.,**

did willfully and knowingly make and use a false writing and document, knowing the same to contain a materially false, fictitious, and fraudulent statement and entry in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit: in response to a federal grand jury subpoena, the defendant submitted false patient records knowing that the records contained false information regarding, among other things, patient history, examinations, treatments, appointments and the prescriptions the Defendant issued.

In violation of Title 18, United States Code, Section 1001(a)(3).

### COUNT 20

31.     On or about August 7, 2015, in the District of Kansas, the defendant,

**STEVEN R. HENSON, M.D.,**

did willfully and knowingly by threats and force did impede; interfere with; attempt to prevent; attempt to obstruct; attempt to impede; or attempt to interfere with the performance of duties under order to wit: a search warrant, issued August 7, 2015, by the Honorable Kenneth G. Gale, United States Magistrate Judge for the District Court of Kansas, by calling 911 to report his home was being burglarized, when in fact the Defendant knew that fully identified agents of the Drug Enforcement Administration (DEA) had shown him a court authorized search warrant; that

18

the defendant had already surrendered his DEA registration; that DEA had been at his house for

over an hour and a half; and that DEA was lawfully executing the search warrant in his presence.

In violation of Title 18, United States Code, Section 1509.

## COUNTS 21-25

## ENGAGING IN A MONETARY TRANSACTION

32.　　That on or about the dates specified below, in the District of Kansas, the defendant,

### STEVEN HENSON,

knowing that property involved in the monetary transactions specified below represented the

proceeds of some form of unlawful activity, did unlawfully, knowingly and intentionally conduct

the monetary transaction in an amount greater than $10,000, which in fact involved the proceeds of

specified unlawful activity, that is conspiracy to distribute a controlled substance and distribution

of a controlled substance in violation of Title 21, United States Code, Sections 841 and 846,

| Count | Date | Amount | Account of Deposit |
|-------|------|--------|--------------------|
| 21 | 10/07/2014 | $ 11,610 | xxx8397 |
| 22 | 11/10/2014 | $ 13,000 | xxx8397 |
| 23 | 01/05/2015 | $ 13,900 | xxxxxxxx2743 |
| 24 | 02/24/2015 | $ 12,840 | xxxxxxxx2743 |
| 25 | 08/03/2015 | $ 11,000 | xxxxxxxxx2178 |

In violation of Title 18, United States Code, Section 1957.

## COUNTS 26-31

## MONEY LAUNDERING – PROMOTION

33.     That on or about the dates specified below, in the District of Kansas, the defendant,

**STEVEN HENSON,**

did unlawfully, knowingly and intentionally conduct the financial transactions specified below,

which in fact involved the proceeds of a specified unlawful activity, that is conspiracy to distribute

a controlled substance and distribution of a controlled substance in violation of Title 21, United

States Code, Sections 841 and 846, knowing that the transactions were intended to further promote

the unlawful activity,

| Count | Date check paid by the bank | Account | Transaction | Amount | Purpose |
|---|---|---|---|---|---|
| 26 | 08/13/2014 | xxx8397 | Check Withdrawal from Relianz Bank | $ 1,600 | 1861 Rock Rd., Wichita, KS Rent payment |
| 27 | 09/26/2014 | xxx8397 | Check Withdrawal from Relianz Bank | $ 800 | 1861 Rock Rd., Wichita, KS Rent payment |
| 28 | 10/30/2014 | xxx8397 | Check Withdrawal from Relianz Bank | $ 1,600 | 1861 Rock Rd., Wichita, KS Rent payment |
| 29 | 01/07/2015 | xxx8397 | Check Withdrawal from Relianz Bank | $ 1,600 | 1861 Rock Rd., Wichita, KS Rent payment |
| 30 | 03/18/2015 | xxx8397 | Check Withdrawal from Relianz Bank | $ 1,600 | 1861 Rock Rd., Wichita, KS Rent payment |
| 31 | 04/02/2015 | xxx8397 | Check Withdrawal from Relianz Bank | $ 800 | 1861 Rock Rd., Wichita, KS Rent payment |

In violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

20

## FORFEITURE ALLEGATIONS

32.     The allegations of Counts 1 through 31 of this Indictment are realleged and fully incorporated herein for the purpose of alleging forfeiture to the United States of America pursuant to Title 21, United States Code, Section 853 and Title 18, United States Code, Section 982.

33.     Upon conviction of one or more of the offenses alleged in Counts 1 through 17 of this Indictment, **STEVEN R. HENSON, M.D.**, shall forfeit to the United States pursuant to Title 21, United States Code, Section 853, any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the said violations and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the said violations, including but not limited to the following:

A.  Currency in the amount of $19,714.00 seized on August 7, 2015;

B.  GMC Yukon VIN: 1GKS2MEF9DR179572;

C.  Israel Weapon Ind Desert Eagle .44 Cal. Serial Number 95253652;

D.  Magnum Research, Inc. Desert Eagle .50 Cal. Serial Number DE0003281;

E.  Glock Model 17 9mm Cal. Serial Number UHH181;

F.  Ed Brown Products, Inc. Kobra Carry .45 Cal. Serial Number 1647;

G.  Sig Sauer, P238 .380 Cal. Serial Number 27B0077974;

H.  Smith & Wesson .45 Cal. Serial Number UCV2270;

I.  HS Products (IM Metal) XD45 .45 Cal. Serial Number XD609330;

J.  A sum of money equal to $584,400 in United States currency, representing the amount of proceeds obtained as a result of the offenses in Counts 1 through 17, for which the defendants are jointly and severally liable.

K.  **STEVEN R. HENSON, M.D.'S** medical license # 04-23263

21

L.  $17,407.72 representing the proceeds of 1,058.864 shares held in Primerica Shareholder Services account xxxxx0892.

M. B.  $57,374.50 representing the proceeds of Wilson-Davis and Company, Inc. account xx5785.

N.  **STEVEN R. HENSON, M.D.'S** DEA Registration numbers BH1912270.

34.     Upon conviction of one or more of the offenses alleged in Counts 21 through 31 of this Indictment, pursuant to Title 18, United States Code, Section 982, upon conviction of an offense in violation of Title 18, United States Code, Sections 1956 or 1957, **STEVEN R. HENSON, M.D.** shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

A.     $17,407.72 representing the proceeds of 1,058.864 shares held in Primerica Shareholder Services account xxxxx0892.

B.     $57,374.50 representing the proceeds of Wilson-Davis and Company, Inc. account xx5785.

C.     A sum of money equal to $70,350 in United States currency, representing the amount of proceeds in violation of Title 18, United States Code, Sections 1956 or 1957, or any property traceable to such shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such proceeds.

## SUBSTITUTE ASSETS

If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

22

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

the United State of America shall be entitled to forfeiture of substitute property pursuant to, pursuant to Title 21, United States Code, Section 853(p) and Title 18, United States Code, Section 982, as incorporated by Title 28, United States Code, Section 2461(c).

All in violation of Title 21, United States Code, Section 853, Title 18, United States Code, Section 982 and Title 28, United States Code, Section 2461(c).

**A TRUE BILL.**


 January 12, 2016            s/Foreperson
DATE                        FOREPERSON OF THE GRAND JURY


   s/Barry R. Grissom
BARRY R. GRISSOM
United States Attorney
District of Kansas
1200 Epic Center, 301 N. Main
Wichita, Kansas 67202
(316) 269-6481
Ks. S. Ct. No. 10866
barry.grissom@usdoj.gov

[It is requested that jury trial be held in Wichita, Kansas.]