IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,
        Plaintiff,

vs.                                                          No. 16-10018-01-JTM

STEVEN R. HENSON,
        Defendant.

MEMORANDUM AND ORDER

The government charged defendant Dr. Steven R. Henson, and numerous co-defendants, with various crimes connected with an alleged opioid distribution business. Henson's co-defendants reached plea agreements with the government, and only Henson proceeded to trial. At the conclusion of the trial, defendant Henson was convicted of two counts of conspiracy to distribute, dispense and possess with intent to distribute prescription drugs in violation of 21 U.S.C. § 841 and 846 (Counts 1 and 2); thirteen counts of illegal drug distribution or dispensing in violation of 21 U.S.C. § 841, and one count of such conduct which resulted in death; one count of making a false writing in violation of 18 U.S.C. § 1001; one count of obstruction in violation of 18 U.S.C. § 1509; and six counts of money laundering in violation of 18 U.S.C. § 1956. The defendant was acquitted of one count of possession of a firearm in furtherance of a drug trafficking crime in violation of

18 U.S.C. § 924; and five counts of money laundering in violation of 18 U.S.C. § 1957. The matter is now before the court on the defendant's Motion for Acquittal or New Trial.

The first argument defendant advances is that the court violated his constitutional rights by disqualifying his counsel of choice. Originally, Henson was represented by Kurt Kerns of Wichita, Kansas. In preparing for trial, the government learned that Mr. Kerns had previously represented a government witness on an aggravated battery charge, and a co-defendant, Joel Torres, Jr., on charges for drug distribution and carrying a concealed weapon. The government moved for a determination of conflict. (Doc. 200 at 2). The court held a hearing on the conflict motion on July 18, 2017. (Doc. 410). At the conclusion of the hearing, the court found—absent some additional arrangement—that a conflict of interest likely existed, and gave the parties a week to suggest solutions.

However, the matter was taken out of the court's hands. Rather than obtaining waivers from his prior clients or providing for other possible resolutions, Mr. Kerns filed a motion to withdraw from the action. Mr. Kerns stated in the motion that he was unable to obtain any waivers. (Dkt. 210).

Following Mr. Kerns's withdrawal, defendant represented by attorneys Erin Thompson and Melanie Morgan. On April 16, 2018, Ms. Morgan and Ms. Thompson notified the court (Dkt. 279) that they were required to withdraw because "they have been discharged and Dr. Henson has retained new counsel." The new counsel chosen by defendant Henson, Beau Brindley, is an attorney with a nationwide practice who

specializes in defending against similar criminal charges. Mr. Brindley ably defended Henson during the trial.

Following the withdrawal of Mr. Kerns, trial was delayed approximately a year, as defendant switched attorneys. During this time, defendant never objected to his representation.

The court finds that defendant is not entitled to a new trial on the grounds sought. First, the court did not reach any final conclusion as to Mr. Kerns's representation. At the hearing on the government's motion to resolve the potential conflict, the court concluded there appeared to be conflict which would require remedial action:

> I really believe that in order to continue representation, you're going to have to obtain a *written waiver of the conflict* both from Dr. Henson and from your former client, and it sounds as if he is not going to be willing to waive that conflict.
> There is -- and I found this interesting, it was a case out of Ohio [*United States v. Turner*, 117 F.Supp.3d 988, 989 (N.D. Ohio 2015)],that was cited in the Government's brief about *a taint team approach, where somebody else from your firm might be in a position to do the cross examination* of the witness but I am not even sure here that that would fully address what needs to be done and so while -- and *I'm happy to hear any evidence* anybody would like to present here on this today, *my inclination* is to find that there is a conflict if you can't obtain waivers from everyone that's involved, Mr. Kerns.
> And if you are able to do that, I would like to know by the end of this week and would like to have those written waivers submitted so that we have them. And if I haven't heard from you by Friday at 9 o'clock that you have obtained the waivers, *absent some further authority*, I intend to find that there is an irreconcilable conflict interest and Dr. Henson is going to have to obtain different counsel. *Unless the parties can agree upon some other approach.*

(Dkt. 410, at 10) (emphasis added).

The court's decision was explicitly not final and suggested alternatives. The court indicated that it was "inclin[ed]" to find a conflict, and acknowledged that this could potentially be resolved in three ways — by "written waiver," by a *Turner* "taint team approach," or by "some other approach" if agreed to by the government and the defendant. The court also asked for "any evidence" any party would like to submit, and also explicitly invited "further authority" on the issue. All of these potential avenues were short-circuited by Mr. Kerns's voluntary withdrawal.

The defendant correctly notes that the ability to chose one's own counsel is an important constitutional right. *See United States v. Gonzalez–Lopez*, 548 U.S. 140, 147-48 (2006). However, "the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159. *See Hagos v. Werholtz*, 548 Fed.Appx. 540, 543 (10th Cir. 2013) (denying certificate of appealability in a collateral attack on conviction based, in part, on the disqualification of defendant's preferred counsel, noting that the district had found the state court's disqualification decision was "neither arbitrary nor unreasonable"). Courts have the duty to "balance a defendant's constitutional right to retain counsel of his choice against the need to maintain the highest standards of professional responsibility, the public's confidence in the integrity of the judicial process and the orderly administration of justice." *United States v. Collins*, 920 F.2d 619, 626 (10th Cir. 1990) (citations omitted).

Even if Henson's first counsel was disqualified erroneously and his choice of counsel thus infringed, it does not follow that he is automatically entitled to new trial. "[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis." *Neder v. United States*, 527 U.S. 1, 8 (1999) (*quoting Rose v. Clark*, 478 U.S. 570, 579 (1986)). *See United States v. Santos*, 201 F.3d 953, 960 (7th Cir. 2000) (noting issue of whether a defendant complaining of erroneous disqualification must show prejudice, and suggesting disqualification is not a structural fault, as the disqualification can be challenged by a writ of mandamus). The Tenth Circuit has indicated that, unless the disqualification is arbitrary rather than simply erroneous, the defendant must show actual prejudice to obtain relief. "Only when the trial court *unreasonably or arbitrarily interferes* with a defendant's right to counsel of choice do we agree a conviction cannot stand, 'irrespective of whether the defendant has been prejudiced.'" *United States v. Mendoza-Salgado*, 964 F.2d 993, 1016 (10th Cir. 1992) (quoting, and adding emphasis to, *United States v. Collins*, 920 F.2d 619, 625 (10th Cir. 1990).

Here, Henson's argument for new trial presents no allegation of arbitrary or unreasonable disqualification (even assuming Mr. Kerns had been disqualified), nor does he even attempt to show how he might have been prejudiced by being represented at trial by a nationally-recognized expert in the defense of medical professionals accused of criminal opioid prescription. (Dkt. 411, at 2-5).

In any event, as noted earlier, the defendant's claim for relief is precluded by the procedural history of the case, which makes it clear that defendant's first counsel voluntarily withdrew from representation, without objection by defendant, prior to any actual decision by this court disqualifying counsel. Defendant's long-belated assertion of his constitutional choice of counsel does not warrant a new trial.

Next, the defendant contends that the court erred in submitting a deliberate ignorance instruction. Instruction 41, as submitted by the court to the jury, defines the concept of "knowingness," and incorporated the deliberate ignorance instruction included in the Tenth Circuit Pattern Criminal Instructions. The jury was thus instructed:

Instruction 41

The term "knowingly" means that defendant realized what he was doing and was aware of the nature of his conduct and did not act through ignorance, mistake, or accident.

When the word "knowingly" is used in these instructions, it means that the act was done voluntarily and intentionally, and not because of mistake or accident. Although knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded himself or herself to the existence of a fact. Knowledge can be inferred if the defendant was aware of a high probability of the existence of the fact in question, unless the defendant did not actually believe the fact in question.

At trial, the defendant objected to the proposed instruction, citing case law including *United States v. Galindo-Torres*, 953 F.2d 1392, 1409-11 (10th Cir. 1992), that the instruction is generally disfavored. Consistent with this understanding, courts such as *Galindo-Torres* have recognized three requirements for such an instruction. First, the

evidence of deliberate ignorance must be independent – "the same fact or facts cannot be used to prove defendant's actual knowledge and deliberate ignorance." Second, the evidence of avoidance must be "deliberate and not equivocal." Third, suspicious circumstances alone, without deliberate acts of avoidance, is not enough.

Here, the deliberate ignorance instruction was not included in the original set of instructions adopted by the court in consultation with counsel. Instead, Instruction No. 41 was only adopted and modified to its final form after hearing the evidence. The instruction was appropriately issued given the evidence in the case. There was a substantial body of evidence which, taken in the light most favorable to the government, demonstrated that Henson knew he was giving dangerous, maximum-strength opioid prescriptions to people who didn't need them (sometimes prescribing them even *before* he even saw the patient). The strongest "act of avoidance" in the case is indeed separate from all the underlying evidence of knowledge because it is the one fact that Henson otherwise relied on in his scheme: his uniform, scripted colloquy with patients in which he asked them if they had pain, they said yes, and then he gave them prescriptions. To a reasonable juror, the fact that Henson asked very limited questions (knowing that the response would always be in essence, "sure, I have pain") — but avoiding any additional probing questions or performing any testing — is just the sort of action that could be deliberate ignorance.

A reasonable person viewing the evidence could conclude that this pantomime of a genuine doctor-patient relationship demonstrated a consistent policy of avoiding the

truth. The jury heard the consistent and credible testimony of the co-defendants and the other patients/victims, in marked contrast to that of the defendant. The evidence fully supports the conclusion that Dr. Henson kept no contemporaneous medical records — and that the "records" Dr. Henson ultimately produced, after learning of the government's criminal case, were not genuine.

The defendant kept no medical records, performed no physical examinations or physical tests, gave massive amounts of opioids to patients with little demonstrated need, wrote unneeded, non-controlled prescriptions in order to defeat pharmacy limits on controlled substances, and knew that patients were travelling improbably long distances to receive opioids. There was ample evidence that Henson was prescribing opioid medications in amounts likely to lead to addiction, and in amounts so expensive that the patients would likely be forced by economic circumstances to support their addiction by selling some of the drugs to others. The evidence included text messages between defendant and others indicating the consciousness of this probability.

Instructing on deliberate ignorance is appropriate where there is "evidence that the defendant purposely contrived to avoid learning all of the facts in order to have a defense in the event of prosecution." *United States v. Delreal-Ordones*, 213 F.3d 1263, 1268 (10th Cir. 2000). Such is the case here.

The defendant suggests that Instruction 41 "may have led the jury to convict based on recklessness or even negligence." (Dkt. 411, at 11). First, the court notes that this speculation follows a discussion of the issue (*id*. at 5-11) which consists solely of caselaw

citations addressing the deliberate ignorance standard without *any* discussion of the actual facts of the case. As indicated earlier, the extensive evidence from the trial, including the credible testimony of co-defendants and patients, pharmacy records, text messages, and the consistently noncredible testimony of defendant, all strongly support issuance of the instruction. Second, the court explicitly instructed the jury in Instruction 41 that negligence was insufficient to establish criminal responsibility. In addition, over the government's objection, the court adopted a malpractice instruction similar to that requested before trial by defendant. Instruction 43 provided:

> You must remember this is not a medical malpractice case. It is not enough for the government to prove any degree of negligence, malpractice, carelessness or sloppiness on Dr. Henson's part. You cannot convict the defendant if all the government proves is that he is an inferior doctor. This is a criminal case, and you must apply the instructions I am giving to you to determine whether Dr. Henson unlawfully distributed or dispensed a controlled substance.

Given all the evidence in the case, the court finds no error in Instruction 41.

In his Motion for Judgment of Acquittal or New Trial, the defendant includes the claim that the court "refused to give the jury his proffered Good Faith instruction." (Dkt. 377, at 1-2). The defendant does not mention the issue in his subsequent Memorandum is support of the motion. (Dkt. 411).

The court finds a new trial is not warranted. The court in fact gave a good faith instruction (Instruction 35) very similar to that requested by the defendant. In fact, the court modified its original good faith instruction to incorporate defendant's objection

9

(Dkt. 351) that subsequent falsehoods are relevant to, but not dispositive of, the issue of good faith. The court's instruction originally provided:

> A defendant does not act in "good faith," even though he or she honestly holds a certain opinion or belief, if he or she knowingly makes false statements or representations to others.

The court modified this passage, in the final version of Instruction 35, to provide:

> If you find that the defendant lied about some aspect of the charged conduct, you may consider that, in addition to other evidence presented, in determining whether the defendant acted in good faith.

The altered language was taken directly from defendant's memorandum, a "minor alteration [which] fully corrects the problem." (Dkt. 351, at 7).

Finally, defendant argues that the court erred in its instruction on the manner or degree in which a defendant must depart from accepted medical practice. The dispute arises from language in Instruction 25, which addressed controlled substances crimes under 21 U.S.C. § 841(a)(1). The Instruction first notes 21 C.F.R. § 1306.04, which permits the lawful prescription of controlled substances. The court stated:

> Under this regulation, a registered medical practitioner may prescribe a controlled substance if she acts both for a legitimate medical purpose and while acting in the usual course of her profession. Without both, a practitioner is subject to prosecution. In other words, if the Government proves beyond a reasonable doubt that a prescription was knowingly written (1) not for a legitimate medical purpose, or (2) outside the usual course of professional practice, then the exception to the Controlled Substances Act does not apply.

Thus, consistent with the underlying regulation, Instruction 25 informed the jury that prescription of a controlled substance by a medical practioner is lawful if it is for a

legitimate medical purpose *and* issued in the usual course of the profession. Criminal liability may arise where the government proves, beyond a reasonable doubt, that either of these two elements did not exist.

The defendant's present argument—that the government must prove both elements were absent—was presented in detail before and during the trial. The disjunctive phrasing adopted by the court as to liability was correct in light of circuit precedent. "A practitioner has unlawfully distributed a controlled substance if she prescribes the substance either outside the usual course of medical practice or without a legitimate medical purpose." *United States v. Nelson*, 383 F.3d 1227 (10th Cir. 2004). In *United States v. MacKay*, 715 F.3d 807, 814 (10th Cir. 2013), the court quoted this language with approval – and emphasized the point by italicizing the "or." And in *United States v. Schneider*, 704 F.3d 1287 (10th Cir. 2013), the court upheld defendant's conviction and approved instructions using disjunctive language).[1]

---

[1] There is strong persuasive authority from other jurisdictions to the same effect. See *United States v. Roland*, 737 Fed.Appx. 484n. 14 (11th Cir. 2018) (approving instructions that Controlled Substances Act violation occurs if defendant acted "either outside the course of professional practice, or for no legitimate medical purpose"); *United States v. Norris*, 780 F.2d 1207, 1209 (5th Cir. 1986); *United States v. Johnson*, 71 F.3d 539, 542 (6th Cir. 1995); *United States v. Singh*, 54 F.3d 1182, 1187 (4th Cir. 1995); *United States v. Bado*, 2017 WL 167959, *4 (E.D. Pa. 2017); *United States v. Binder*, 26 F.Supp.3d 656 (E.D. Mich. 2014); *United States v. May*, 2014 WL 1671506, *4 (W.D.N.Y. April 23, 2014). In *United States v. Gianoli*, 537 F. App'x 849, 851 (11th Cir. 2013), the court observed there was "no evidence … to conclude that Gianoli prescribed Oxycodone knowing it was for no legitimate medical purpose but still acted within the usual course of the medical profession. *Those two things are inconsistent with each other*." (Emphasis added).

IT IS ACCORDINGLY ORDERED this day of March, 2019, that the defendant's Motion for Acquittal or New Trial is hereby denied.

<pre>
                              s/ J. Thomas Marten
                              J. Thomas Marten, Judge
</pre>